UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC CORNELIUS,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>MANDIANT, INC., ENRIQUE SALEM, KEVIN MANDIA, KIMBERLY ALEXY, SARA ANDREWS, RONALD E. F. CODD, ARTHUR W. COVIELLO, JR., ADRIAN MCDERMOTT, VIRAL PATEL, and ROBERT SWITZ,<br><br>　　　Defendants. | Case No:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by Plaintiff's undersigned attorneys, for this complaint against Defendants (defined below), alleges upon personal knowledge with respect to Plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows.

**NATURE OF THE ACTION**

1. This is an action against Mandiant, Inc. ("Mandiant" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Mandiant by Google LLC ("Google") and its wholly owned subsidiary, Dupin Inc. ("Merger Sub").

2. On April 28, 2022, the Company filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") in connection with the Proposed Transaction.

1

3. The Proxy Statement, which recommends that the Company's shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) potential conflicts of interest involving Company insiders; (iii) potential conflicts of interest involving the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"); (iv) the Company's financial projections; and (v) financial analyses performed by Goldman Sachs in connection with its fairness opinion.

4. Unless and until the material misstatements and omissions (referenced below) are remedied before the June 3, 2022 shareholder vote on the Proposed Transaction, Mandiant shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of Mandiant common stock.

10. Defendant Mandiant engages in the provision of cyber defense solutions. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "MNDT."

11. Defendant Enrique Salem ("Salem") is Chairman of the Board of the Company.

12. Defendant Kevin Mandia ("Mandia") is Chief Executive Officer ("CEO") and a director of the Company.

13. Defendant Kimberly Alexy ("Alexy") is a director of the Company.

14. Defendant Sara Andrews ("Andrews") is a director of the Company.

15. Defendant Ronald E. F. Codd ("Codd") is a director of the Company.

16. Defendant Arthur W. Coviello, Jr. ("Coviello") is a director of the Company.

17. Defendant Adrian McDermott ("McDermott") is a director of the Company.

18. Defendant Viral Patel ("Patel") is Senior Managing Director at Blackstone and a director of the Company.

19. Defendant Robert Switz ("Switz") is a director of the Company.

20. Defendants Salem, Mandia, Alexy, Andrews, Codd, Coviello, McDermott, Patel and Switz are collectively referred to herein as the "Individual Defendants."

21. Defendants Mandiant and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. On March 8, 2022, Mandiant issued a press release announcing the Proposed Transaction pursuant to which Google would acquire Mandiant for $23.00 per share in cash. The press release states, in relevant part:

### Google to Acquire Mandiant

*Acquisition to bring Google speed and scale to Mandiant's unparalleled intelligence and expertise – at a time when security has never been more important*

March 08, 2022 06:27 AM Eastern Standard Time

RESTON, Va.--(BUSINESS WIRE)--Mandiant, Inc. (NASDAQ: MNDT) today announced that it has entered into a definitive agreement to be acquired by Google LLC for $23.00 per share in an all-cash transaction valued at approximately $5.4 billion, inclusive of Mandiant's net cash. The offer price represents a 57% premium to the undisturbed 10-day trailing volume weighted average price as of February 7, 2022, the last full trading day prior to published market speculation regarding a potential sale of the Company. Upon the close of the acquisition, Mandiant will join Google Cloud.

For the past 18 years, Mandiant has delivered unparalleled frontline expertise and industry-leading threat intelligence. Mandiant's more than 600 consultants currently respond to thousands of security breaches each year. Paired with research from more than 300 intelligence analysts, these resulting insights are what power Mandiant's dynamic cyber defense solutions – delivered through the managed multi-vendor XDR platform, Mandiant Advantage.

Google Cloud has made security the cornerstone of its commitment to customers and users around the world – building cloud-native security into the foundation of its technology to block malware, phishing attempts and potential cyber attacks at scale. The Mandiant acquisition underscores Google Cloud's commitment to advancing its security offerings to better protect and advise customers across their on-premise and cloud environments.

The acquisition will complement Google Cloud's existing strengths in security. Together with Mandiant, Google Cloud will deliver an end-to-end security operations suite with even greater capabilities as well as advisory services helping customers address critical security challenges and stay protected at every stage of the security lifecycle.

"Cyber security is a mission, and we believe it's one of the most important of our generation. Google Cloud shares our mission-driven culture to bring security to every organization," said Kevin Mandia, CEO, Mandiant. "Together, we will deliver our expertise and intelligence at scale via the Mandiant Advantage SaaS platform, as part of the Google Cloud security portfolio. These efforts will help organizations to effectively, efficiently and continuously manage and configure their complex mix of security products."

"The Mandiant brand is synonymous with unmatched insights for organizations seeking to keep themselves secure in a constantly changing environment," said Thomas Kurian, CEO, Google Cloud. "This is an opportunity to deliver an end-to-end security operations suite and extend one of the best consulting organizations in the world. Together we can make a profound impact in securing the cloud, accelerating the adoption of cloud computing, and ultimately make the world safer."

The acquisition is subject to customary closing conditions, including the receipt of Mandiant stockholder and regulatory approvals, and is expected to close later this year. Goldman Sachs & Co. LLC is acting as exclusive financial advisor, and Wilson Sonsini Goodrich & Rosati P.C. is acting as legal advisor to Mandiant. For more information, please see Google's press release.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

23. The Proxy Statement omits and/or misrepresents material information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) potential conflicts of interest involving Company insiders; (iii) potential conflicts of interest involving Goldman Sachs; (iv) the Company's financial projections; and (v) financial analyses performed by Goldman Sachs in connection with its fairness opinion.

24. The omission of the material information (below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Mandiant Board and Reasons for the Merger; (iii) Opinion of Goldman Sachs & Co. LLC; and (iv) Projected Financial Information.

#### 1. Material Omissions Regarding the Sales Process Leading up to the Proposed Transaction

25. First, the Proxy Statement provides that the Company entered into or was party to

confidentiality agreements with seven (7) strategic acquirers and four (4) potential financial acquirers, "certain" of which agreements contained standstill provisions, but none of which "prohibited [(past tense)] the counterparty from making a public or private proposal to acquire all of [the Company's] common stock." The Proxy Statement, however, fails to disclose whether any and all of the confidentiality agreements with potential strategic and financial acquirers contain any provisions that may currently or in the future preclude any strategic or financial party from making a strategic or superior proposal to acquire the Company or its stock.

26. Without this information, the Company's shareholders may have the mistaken belief that potential acquirers are permitted to submit superior proposals for the Company, when in fact they are contractually prohibited from doing so. This information is material because a reasonable shareholder would want to know, prior to voting their shares in connection with the Proposed Transaction, whether potential buyers are or were foreclosed from submitting a strategic or superior proposal.

27. Second, the Proxy Statement fails to provide adequate reasoning as to why the Transaction Committee contained directors who were not completely independent or disinterested, including Defendant Patel, who serves as a high-level executive at Blackstone or its affiliates.

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Regarding Company Insiders' Potential Conflicts of Interest**

29. First, the Proxy Statement fails to adequately disclose whether Defendant Mandia, who has apparently been offered employment with Google after the Proposed Transaction closes, was ever authorized by the entire Board to negotiate a sale of the Company in June and July 2021 (as noted above) and at various points in time.

6

30. Second, the Proxy Statement fails to sufficiently disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors.

31. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Regarding Goldman Sachs's Potential Conflicts of Interest

33. As noted, on February 19, 2022, Goldman Sachs provided the Company with "customary relationship disclosures regarding Goldman Sachs' relationships with Parent, Strategic A, and Strategic B." *Id*. at 42. The Proxy Statement, however, fails to disclose the details of such then-current and historical relationships.

34. The Proxy Statement also fails to adequately disclose the compensation Goldman Sachs received for advisory services provided in 2019 and beyond in connection with the sale of the Company's FireEye Products Business.

35. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions.

36. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**4. Material Omissions Regarding the Company's Financial Projections**

37. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the Company's projections of revenue and unlevered free cash flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

38. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Mandiant and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company.

39. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**5. Material Omissions Regarding Goldman Sachs's Analyses**

41. The Proxy Statement fails to disclose the following concerning Goldman Sachs's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) range of discount rates of 9.25% to 11.25%, and (ii) perpetuity growth rates of 2% to 4%; (2) the range of illustrative terminal values; (3) the line items underlying the projections utilized in the analysis; (4) the number of fully diluted outstanding shares of the Company; and (5) the net debt used in the analysis.

42. The Proxy Statement fails to disclose the following concerning Goldman Sachs's

"*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the discount rates and multiples used in the analysis; (2) the net debt used in the analysis; and (3) the fully diluted shares used in the analysis.

43. The Proxy Statement fails to disclose the following concerning Goldman Sachs's "*Precedent Transactions Multiples*" analysis: (1) the value of each transaction; and (2) the closing date of each transaction.

44. With respect to Goldman Sachs's "*Premia Paid Analysis*," the Proxy Statement fails to disclose: (1) the transactions observed in the analysis; and (2) the premiums paid in each transaction.

45. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman Sachs's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

46. Without the information described above, the Company's shareholders are unable to fully understand Goldman Sachs's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

47. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

51. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2022                                    Respectfully submitted,

**MOORE KUEHN, PLLC**

/s/ Justin A. Kuehn
Justin A. Kuehn
Fletcher W. Moore (Admission Forthcoming)
30 Wall Street, 8th Floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*